UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS

_____
                              )
TINA MAILLET,                 )
          Plaintiff,          )
                              )Civil Action No. 13-cv-10168-PBS
     v.                       )
                              )
TD BANK US HOLDING COMPANY,   )
          Defendant.          )
_____)

                        **MEMORANDUM AND ORDER**

                           November 8, 2013

Saris, C.J.

                          **I. INTRODUCTION**

    Plaintiff Tina Maillet brings this action pursuant to Title VII, 42 U.S.C. § 2000e-3 and Mass. Gen. Laws ch. 151B §§ 4(4), 4(4A), against her former employer, TD Bank US Holding Co. ("TD Bank"), alleging that it retaliated against her for defending herself against a sexual discrimination charge brought by another employee. Defendant has moved to dismiss the Second Amended Complaint (Docket No. 22), arguing that plaintiff (i) failed to exhaust administrative remedies prior to bringing this action because she did not verify the Intake Questionnaire, and (ii) did not engage in activity protected under Title VII or Chapter 151B. The Court concludes that plaintiff has failed to exhaust her administrative remedies and stays the case to give her the opportunity to correct this.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The following alleged facts - culled from the Second Amended Complaint unless otherwise noted - are taken to be true for purposes of this motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009).

Plaintiff began working for TD Bank as a bank teller on April 4, 1994. In July of 2011, she was informed by her supervisor that another employee at TD Bank had filed a formal sexual discrimination charge against her with the Massachusetts Commission Against Discrimination ("MCAD"). In an internal investigation of these allegations that continued into September 2011, plaintiff answered questions and gave statements to defendant's attorneys in weekly telephone calls. The MCAD complaint was subsequently resolved without any agency proceedings.

Shortly after, plaintiff's supervisor told her that she would not be awarded her quarterly bonus for outstanding sales performance because of the time defendant had spent to investigate the MCAD charge. In December 2011, plaintiff was reprimanded for sending particular work emails - despite the fact that she had never been informed not to do so - and was told soon thereafter that she must either take a demotion or resign. Plaintiff left her position at TD Bank.

On or about June 29, 2012, plaintiff described defendant's alleged retaliation in an Equal Employment Opportunity Commission

("EEOC") Intake Questionnaire, which she signed, although it was not verified under oath or penalty of perjury. See Second Am. Compl., Att. #1 at 3-6 ("Pl.'s Intake Questionnaire"). Nowhere does the Intake Questionnaire state that allegations must be verified. See id. Plaintiff's attorney filed the Intake Questionnaire with the EEOC Boston office on July 9, 2012. The EEOC did not request further information from either plaintiff or defendant. Instead, on October 31, 2012, the EEOC dismissed the case and issued plaintiff a right-to-sue letter without making a finding as to whether defendant violated federal law. See Second Am. Compl., Att. #1 at 8-9 ("EEOC Right-to-Sue Letter"). Plaintiff then filed a Verified Complaint (Docket No. 1) in federal court on January 28, 2013.

### III. DISCUSSION

Defendant argues that plaintiff failed to exhaust her administrative remedies under Title VII because she never verified her charge in the agency proceedings. "Title VII requires exhaustion of administrative remedies as a condition precedent to suit in federal district court." Jensen v. Frank, 912 F.2d 517, 520 (1st Cir. 1990) (citing Brown v. Gen. Servs. Admin., 425 U.S. 820, 832 (1976)). To fulfill exhaustion requirements, a plaintiff must timely file a verified charge with an administrative body, either the EEOC or MCAD, and receive a right-to-sue letter. See Aly v. Mohegan Council, Boy Scouts of Am., 711 F.3d 34, 41 (1st Cir.

2013). Title VII requires that "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires." 42 U.S.C. § 2000e-5(b). EEOC regulations require complainants to verify their administrative allegations, meaning that they are "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. §§ 1601.3(a), 1601.9. Administrative regulations, however, also allow for amended verification: if an initial EEOC filing is unverified, a complainant can later swear an oath that "relates back" to confirm the allegations in the initial filing. 29 C.F.R. § 1601.12(b). No statutory provision or EEOC regulation sets a deadline for filing an amended charge containing a verification. However, issuance of a right-to-sue letter normally terminates the processing of an administrative charge. See 29 C.F.R. §§ 1601.28(a)(3), 1601.12(b); see also EEOC Right-to-Sue Letter ("The Commission's processing of this charge has been concluded."). The EEOC may issue a right-to-sue letter without requesting any response from an employer. See 29 C.F.R. § 1601.28(b)(3) (EEOC will issue right-to-sue letter if it has dismissed a charge under 29 C.F.R. § 1601.18, which does not always require investigation or employer response).

The Supreme Court addressed the importance of the verification requirement to the administrative process in <u>Edelman v. Lynchburg College</u>. 535 U.S. 106, 113 (2002). A complaint to the EEOC "starts the agency down the road to investigation, conciliation and enforcement, and it is no small thing to be called on to respond." <u>Id.</u> at 115. The verification provision "is meant to provide some degree of insurance against catchpenny claims of disgruntled, but not necessarily aggrieved, employees." <u>Id.</u> EEOC regulations therefore protect the "employer's interest by refusing to call for any response to an otherwise sufficient complaint until the verification has been supplied." <u>Id.</u> Meanwhile, the Supreme Court emphasized that Title VII is a remedial scheme wherein lay employees, "who may not know enough to verify on filing, will not risk forfeiting [their] rights inadvertently" once provided with the safety net of the verification amendment process. <u>Id.</u> To balance both parties' interests, the Court held that verification is required "by the time an employer is obliged to respond to the charge, not at the time an employee files it with the EEOC." <u>Id.</u> at 113. The Court specifically noted:

> The general practice of Commission staff members is to prepare a formal charge of discrimination for the complainant to review and to verify, once the allegations have been clarified. The complainant must submit a verified charge before the agency will require a response from the employer . . . [O]ur understanding is that the EEOC's standard practice is to caution complainants that if they fail to follow up on their initial unverified charge, the EEOC will not proceed further with the complaint.

5

Id. at 115 n.9 (citations omitted).

Six years later, the Supreme Court held that an Intake Questionnaire can stand in place of a formal EEOC charge form if it can "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights." Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008) (involving age discrimination claim). Although an Intake Questionnaire must be verified under Title VII, it can be amended after the initial filing to meet the verification requirement. See Aly, 711 F.3d at 44 (holding that intake questionnaire amended to meet verification requirement related back to earlier filed unverified complaint and satisfied statutory and regulatory requirements under federal law).

The Supreme Court has never set a deadline for an amendment to verify an initial complaint other than that verification must occur before the "employer is obliged to respond" to the EEOC charge. Edelman, 535 U.S. at 113; see generally 4 LARSON ON EMPLOYMENT DISCRIMINATION § 70.04[3] (2013). As the First Circuit later explained, the verification requirement has "a distinct objective, namely, to protect employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury." Aly, 711 F.3d at 42 (citation and internal quotation marks omitted).

6

In the wake of Edelman and Holowecki, the EEOC Intake Questionnaire has became a trap for the unwary litigant. Because the signature block at the end of the EEOC Intake Questionnaire does not include an oath or perjury statement, this document alone does not satisfy administrative exhaustion requirements.[1] Nowhere on the Intake Questionnaire does the EEOC state that allegations must be verified under the pains and penalties of perjury. Indeed, the EEOC website does not clarify that the Intake Questionnaire is not a bona fide charge without verification. Yet, as it did in response to plaintiff's Intake Questionnaire in this case, the EEOC may promptly issue a "right-to-sue" letter, brooming out the proceedings without giving a complainant the advance notice envisioned by the Supreme Court that amended verification is

---

[1] See Intake Questionnaire, http://egov.eeoc.gov/eas/uniformintakequestionnaire09.pdf (Sept. 20, 2008); see also Pl.'s Intake Questionnaire. The history of the Intake Questionnaire is helpful in understanding the confusion. Initially, the purpose of the EEOC Intake Questionnaire was "to facilitate pre-charge filing counseling and to enable the agency to determine whether it had jurisdiction over potential charges." Holowecki, 552 U.S. at 405 (citation and quotation marks omitted). By contrast, Form 5, the official EEOC charge form, is labeled "Charge of Discrimination" and independently constitutes a sufficient administrative charge. See id. By 2006, the EEOC designed the Uniform Intake Questionnaire for its National Contact Center and, in August 2007, mandated that all field offices use this version. See Brief for the United States as Amicus Curiae, p. 3 n.2, Holowecki, 552 U.S. at 389. It is now common EEOC practice to direct complainants to fill out an Intake Questionnaire as the initial procedural step. After Holowecki, the EEOC added a section on the Intake Form where a complainant can affirm "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described." See Intake Questionnaire. However, it did not add a verification section to the form.

necessary for an Intake Questionnaire to satisfy exhaustion requirements. See Edelman, 535 U.S. at 115 n.9.[2] Right-to-sue in this context is a misnomer since a plaintiff has no right to sue if she has not met the statutory verification requirement.

Potential complainants attempting to engage the EEOC process through the Commission's national website are first directed to fill out an Intake Questionnaire, which is provided as a link. See How to File a Charge of Employment Discrimination ("How to File page") (last visited Nov. 8, 2013).[3] The website explicitly states that charges cannot be lodged online, but that an individual should fill out the Questionnaire and "bring or mail [it] to the appropriate EEOC field office to begin the process of filing a charge." Id. The page does provide an alternative to filing an Intake Questionnaire, explaining, "You can file a charge by sending us a letter that includes the following information," but the list of requirements includes only "Your signature," with no mention of verification. Id.

---

[2] See also 2 Barbara T. Lindemann, et al., EMPLOYMENT DISCRIMINATION LAW 26-20 (5th ed. 2012):

>  Noting that the EEOC has already made some changes to the charge-filing process to make it clearer and more consistent, the Court said that the EEOC must determine whether additional revisions in its forms and processes are necessary or appropriate to "reduce the risk of further misunderstandings." Holowecki, 552 U.S. at 407.

[3] http://www1.eeoc.gov//employees/howtofile.cfm

The FAQ section on the website pertaining to filing charges does little to remedy potential misunderstandings. Under "How do I file a charge of employment discrimination?" the EEOC mentions Form 5, the official charge form, but equates this with an Intake Questionnaire:

> Your charge is filed when the completed, signed Form 5 is received back in the EEOC field office. **An intake questionnaire or other correspondence can also constitute a charge under the statutes we enforce if it contains all the information required by EEOC regulations governing the contents of a charge and constitutes a clear request for the EEOC to act.**

(Mar. 19, 2013) (emphasis in original).[4] This statement is misleading; a complainant could easily assume that a filled-out intake questionnaire was a sufficient EEOC charge and never ask about further requirements such as verification. Consulting the listed requirements for a charge also does not help; the list never mentions verification. See id. (same list as that on How to File page).

The key question, then, is determining whether the failure to amend an unverified administrative charge before the employer has had to respond to an EEOC charge, but after the right-to-sue letter was issued, dooms this action. Prior to Edelman, two circuits held that the right-to-sue letter is the regulatory guillotine. The Fourth Circuit found that a verification amendment filed after the EEOC issued a right-to-sue letter, closed its files, and an action

---

[4] http://eeoc.custhelp.com/app/answers/detail/a_id/334

was filed in court is not timely and does not relate back to the initial EEOC filing. Balazs v. Liebenthal, 32 F.3d 151, 157 (1994). The Eleventh Circuit, reasoning that verification is a "mandatory" prerequisite to suit, rejected arguments that the EEOC in effect waived the verification requirement when it issued a right-to-sue letter, and instead affirmed summary judgment for the defendant because the plaintiff had not verified her administrative charges and had never made any attempt to amend this failure prior to filing suit. Vason v. City of Montgomery, 240 F.3d 905, 907 (2001).[5]

However, in an unpublished decision post-Edelman, the Ninth Circuit held that a failure to verify is a "mere technical defect" that can be remedied under 29 C.F.R. 1601.12(b) even after a right-to-sue letter has been issued. See McWilliams v. Latah Sanitation, Inc., 149 Fed. App'x 588, 590 (2005). The court concluded that even at a fairly late stage of the proceedings - when the defendant had already appeared in federal court and moved for summary judgment - the plaintiff could still file for amended verification from the EEOC. Id. The court's reasoning that the opportunity for amended verification does not expire at the right-to-sue letter is supported by the fact that, in many instances, the EEOC may issue

---

[5] See also Danley v. Book-of-the-Month Club, 921 F. Supp. 1352, 1354 (M.D. Pa. 1996), aff'd 107 F.3d 861 (3rd Cir. 1997) (holding that "a private litigant cannot maintain a Title VII claim where his or her EEOC charge was not verified prior to the EEOC's issuance of a right to sue letter").

a right-to-sue letter without ever requesting a response from the employer (the Edelman deadline). See 29 C.F.R. § 1601.28(b)(3) (EEOC will issue right-to-sue letter if it has dismissed a charge under 29 C.F.R. § 1601.18, which may not require investigation or employer response). The court issued a stay to allow the plaintiff to request leave from the EEOC to file a late verification. McWilliams, 149 Fed. App'x at 590.

As the Supreme Court itself pointed out, in civil litigation the rules permit amendments that relate back in a variety of other contexts. See Edelman, 535 U.S. at 115-16 & n.10. For example, amendments can relate back to the complaint even after judgment. Fed. R. Civ. P. 15(b)(2) ("A party may move - at any time, even after judgment - to amend the pleadings to conform them to the evidence and to raise an unpleaded issue."); cf. Becker v. Montgomery, 532 U.S. 757, 765 (2001) (permitting appellant to late cure failure to satisfy signature requirement under Fed. R. Civ. P. 11). As such, Edelman suggests that efforts to cure the verification defect even after issuance of a right-to-sue letter would not necessarily be precluded, although the Court did not rule on the precise point.

The next issue is whether plaintiff must return to the EEOC to fix her failure to verify. While verification is a mandatory statutory prerequisite, most courts that have addressed the issue have held that verification is not a jurisdictional requirement and

can be waived. See, e.g., Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 263 (3d Cir. 2006) (holding defendant who received notice of unverified charges and challenged these charges on the merits in EEOC proceedings waived objection to intake questionnaire not signed "under penalty of perjury"); Price v. Sw. Bell Tel. Co., 687 F.2d 74, 79 (5th Cir. 1982) (weighing equitable considerations because "the verification requirement is non-jurisdictional"); EEOC v. JBS USA, LLC, 794 F. Supp. 2d 1188, 1202-03 (D. Colo. 2011) (finding that defendant waived the verification objection because when it "chose to respond on the merits [in the conciliation process] instead of raising the technical requirement, it gave up the protection the requirement affords")(citation and internal quotation marks omitted).[6] The Third Circuit's reasoning in Buck is persuasive that the verification requirement of Section 2000e-5(b) is a statutorily mandated element of an EEOC charge, not a jurisdictional requisite to suit. 452 F.3d at 262-63 (basing its reasoning on Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (holding an analogous provision, Title VII's mandatory time

---

[6] The Fourth Circuit did find that the verification requirement under 42 U.S.C. § 2000e-5(b) was jurisdictional, see EEOC v. Appalachian Power Co., 568 F.2d 354 (1978), but this ruling was made four years before Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982). The Supreme Court reasoned that EEOC time limits on administrative filing were not jurisdictional because the Title VII jurisdiction provision did not mention time limits, which, like the verification requirement, appeared instead "as an entirely separate provision" and did "not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." Zipes, 455 U.S. at 393-94.

limit, is not jurisdictional)); cf. LARSON ON EMPLOYMENT DISCRIMINATION § 70.03[1] ("Several circuits . . . have handed down decisions that refer to all of the administrative requirements simply as prerequisites or as conditions precedent and reject the argument that these requirements are jurisdictional."). However, based on this record, the Court has no basis for stating that defendant waived the verification request since there were no EEOC proceedings.

Plaintiff argues that equitable considerations preclude dismissal. Because the "verification requirement is non-jurisdictional, it is therefore subject to equitable considerations." Price, 687 F.2d at 79 (finding possibility of EEOC waiver of verification requirement was a triable issue of fact because verification was not a jurisdictional requirement). The Fifth Circuit found equitable considerations permitted suit to proceed where a pro se plaintiff "unschooled in the law and without the aid of counsel" understandably took "no further action during the limitation period [and failed to amend her initial filing] in the belief that she had done that which was required of her." Id. at 79. Plaintiff here cannot similarly argue "reasonable ignorance" of statutory requirements because she was represented by counsel. Typically, when a plaintiff is represented by counsel, she is deemed to have constructive knowledge of statutory filing requirements. See Kale v. Combined Ins. Co., 861 F.2d 746, 753 (1st

13

Cir. 1988)(finding equitable tolling does not apply when plaintiff is represented by counsel and thus has constructive knowledge of statutory filing requirements). Therefore equitable considerations do not support forgiving plaintiff's failure to verify.

Here, in light of the broad remedial purpose of Title VII, the Court concludes that the best remedy is to stay the proceedings and permit plaintiff to return to the EEOC to verify her charge. The current action never reached the point where defendant was obliged to respond to the EEOC charge because the right-to-sue letter was issued before a response was required. Issuance of a stay to allow the parties to benefit from the liberal remedial scheme is consistent with the approach taken by the Supreme Court in Holowecki. 552 U.S. at 407 (suggesting that trial court stay proceedings so that the parties could have an opportunity for conciliation and settlement at EEOC, which failed to properly treat intake questionnaires as a charge). The Court will permit plaintiff to return to the EEOC and, within the next 30 days, seek to reopen the proceedings and file an amended verification to relate back to the initial charge. These proceedings will be stayed until the EEOC acts on this motion.  If plaintiff does not file such a motion or is unsuccessful, defendant may renew its motion to dismiss.

## IV. ORDER

For the foregoing reasons, the Court stays this action.

                                        /s/ PATTI B. SARIS  
                                        PATTI B. SARIS  
                                        United States District Judge